

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:20-cr-00203 |
| Plaintiff, | |
| v. | JUDGE SARAH D. MORRISON |
| RICCO L. MAYE (1) | **SUPERSEDING** |
| AIRRIKA N. ANTHONY (2) | **INDICTMENT** |
| NICOLE L. GROVES (3) | |
| KEVIN E. PEARSON (4), | 18 U.S.C. § 1349 |
| | 21 U.S.C. § 841(a)(1) |
| | 21 U.S.C. § 841(b)(1)(A) |
| Defendants. | 21 U.S.C. § 841(b)(1)(B) |
| | 21 U.S.C. § 841(b)(1)(C) |
| | 21 U.S.C. § 846 |

THE GRAND JURY CHARGES:

## COUNT 1
### (Distribution of Controlled Substances)

On or about October 16, 2018, in the Southern District of Ohio, the defendant, **RICCO L. MAYE**, did knowingly, intentionally, and unlawfully distribute a mixture or substance containing a detectable amount of cocaine base, commonly referred to as crack, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 2
### (Distribution of Controlled Substances)

On or about November 1, 2018, in the Southern District of Ohio, the defendant, **RICCO L. MAYE**, did knowingly, intentionally, and unlawfully distribute a mixture or substance

1

containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide,

commonly referred to as fentanyl, and cocaine, both Schedule II controlled substances.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 3
### (Distribution of Controlled Substances)

On or about November 29, 2018, in the Southern District of Ohio, the defendant, **RICCO**

**L. MAYE**, did knowingly, intentionally, and unlawfully distribute a mixture or substance

containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide,

commonly referred to as fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 4
### (Possession with Intent to Distribute Controlled Substances)

On or about September 2, 2019, in the Southern District of Ohio, the defendant, **RICCO**

**L. MAYE**, did knowingly, intentionally, and unlawfully possess with intent to distribute a

mixture or substance containing a detectable amount of cocaine base, commonly referred to as

crack, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

## COUNT 5
### (Distribution of Controlled Substances)

On or about October 7, 2020, in the Southern District of Ohio, the defendant, **RICCO L.**

**MAYE**, did knowingly, intentionally, and unlawfully distribute a mixture or substance

containing a detectable amount of cocaine base, commonly referred to as crack, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 6
### (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances)

Beginning in 2018 through and including the date of this Superseding Indictment, the exact dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, the defendants, **RICCO L. MAYE, AIRRIKA N. ANTHONY, NICOLE L. GROVES** and **KEVIN E. PEARSON,** did knowingly, intentionally and unlawfully combine, conspire, confederate and agree with each other and with other individuals, both known and unknown to the Grand Jury, to distribute, to possess with intent to distribute and to attempt to distribute:

400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly referred to as fentanyl, a Schedule II controlled substance;

280 grams or more of a mixture or substance containing a detectable amount of cocaine base, commonly referred to as crack, a Schedule II controlled substance;

500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; and

5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A) and 841(b)(1)(B).

3

## COUNT 7
### (Possession with Intent to Distribute Controlled Substance)

On or about June 7, 2020, in the Southern District of Ohio and elsewhere, the defendants,

**RICCO L. MAYE, AIRRIKA N. ANTHONY, NICOLE L. GROVES** and **KEVIN E.**

**PEARSON**, did knowingly, intentionally and unlawfully possess with intent to distribute 500

grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule

II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2.

## COUNT 8
### (Possession with Intent to Distribute Controlled Substance)

On or about November 18, 2020, in the Southern District of Ohio and elsewhere, the

defendants, **RICCO L. MAYE** and **KEVIN E. PEARSON**, did knowingly, intentionally and

unlawfully possess with intent to distribute 40 grams or more of a mixture or substance

containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide,

commonly referred to as fentanyl, a Schedule II controlled substance;  a mixture or substance

containing a detectable amount of cocaine base, commonly referred to as crack, a Schedule II

controlled substance; and a mixture or substance containing a detectable amount of cocaine, a

Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) and 18 U.S.C. § 2.

## COUNT 9
### (Possession with Intent to Distribute Controlled Substance)

On or about November 18, 2020, in the Southern District of Ohio and elsewhere, the

defendants, **RICCO L. MAYE** and **AIRRIKA ANTHONY**, did knowingly, intentionally and

4

unlawfully possess with intent to distribute 5 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2.

## COUNT 10
### (Conspiracy to Commit Wire and Mail Fraud)

Beginning in at least May of 2020 and continuing through the date of this Superseding Indictment, the exact dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, the defendants, **RICCO L. MAYE, AIRRIKA N. ANTHONY,** and **NICOLE L. GROVES**, did knowingly and intentionally conspire and agree with each other, and with other individuals known and unknown to the Grand Jury, to commit the following offenses:

a) mail fraud, that is, devise and intend to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud and attempting to do so, caused to be deposited in any post office and authorized depository for mail matter, any matter and thing whatever to be sent and delivered by the United States Postal Service and any private and commercial interstate carrier, in violation of 18 U.S.C. § 1341; and

b) wire fraud, that is, to devise and intend to devise a scheme to defraud and to obtain money and property from government entities, including the State of Ohio Department of Job and Family Services (ODJFS) and the State of Michigan Unemployment Insurance Agency (UIA), by means of materially false and fraudulent pretenses, representations, and promises, and material omissions, and, for the purpose of executing the scheme, and attempting to do so, transmitted and caused to be transmitted by means of wire

communications in interstate commerce, writings, signs, signals, and pictures, in
violation of 18 U.S.C. § 1343.

*The Object of the Conspiracy*

The object of the conspiracy was for the defendants and others to obtain money by
submitting applications to state government agencies responsible for dispersing Pandemic
Unemployment Assistance ("PUA") payments, in which the defendants made knowing and
material false statements regarding their employment history or other information, in order to
appear to be eligible to receive PUA payments.

*Manner and Means of the Conspiracy*

The manner and means by which the defendants, and others known and unknown to the
Grand Jury, sought to accomplish the object of the conspiracy included, but are not limited to,
the following:

a) Defendant **MAYE** filed for PUA benefits through the online application process
provided by ODJFS on or about May 22, 2020, which was processed at servers
located in the State of Virginia. At the time that **MAYE** completed the application,
he falsely claimed that he was unemployed due to the COVID-19 pandemic. **MAYE**
further filed certifications through the online ODJFS system in which he claimed that
he continued to be unemployed due to the COVID-19 pandemic between
approximately March 15, 2020 and October of 2020. As a result of these false and
fraudulent claims, approximately $7400 in PUA funds were deposited to **MAYE's**
bank account.

b) Defendant **MAYE** filed for PUA benefits through the online application process
provided by Michigan's UIA in or about June of 2020. At the time that **MAYE**
completed the application, he falsely claimed that he was a resident of Michigan,

6

when, in fact, he was a resident of Ohio. **MAYE** further failed to disclose that he had previously filed and received PUA payments from ODJFS. As a result of these false and fraudulent claims, approximately $10,000 in PUA funds were deposited to **MAYE's** bank account.

c) Defendant **ANTHONY** filed for PUA benefits through the online application process provided by ODJFS on or about May 21, 2020, which was processed at servers located in the State of Virginia. At the time that **ANTHONY** completed the application, she falsely claimed that she was unable to reach her place of employment because she had been advised by a health care professional to self-quarantine due to COVID-19 concerns and that she was unable to reach her place of employment due to a COVID-19 quarantine. **ANTHONY** further filed certifications through the online ODJFS system for the weeks of June 29, 2020, through January 23, 2021, in which she failed to respond to the question whether she continued to be unemployed due to the COVID-19 pandemic and falsely claimed that she did, in fact, continue to be unemployed due to the COVID-19 pandemic. As a result of these false and fraudulent claims, approximately $13,900 in PUA funds were deposited to **ANTHONY's** bank account and loaded onto debit cards that were delivered to **ANTHONY** by the United States Postal Service.

d) Defendant **ANTHONY** filed for PUA benefits through the online application process provided by Michigan's UIA on or about June 30, 2020. At the time that **ANTHONY** completed the application, she falsely claimed that she had previously been employed in Michigan, when, in fact, she had not been employed in the State of Michigan. **ANTHONY** further failed to disclose that she had previously filed and received PUA payments from ODJFS.

e) Defendant **GROVES** filed for PUA benefits through the online application process provided by Michigan's UIA on or about June 7, 2020. At the time that **GROVES** completed the application, she falsely claimed that she was a resident of Michigan, when, in fact, she was a resident of Ohio.

f) Defendant **GROVES** filed for PUA benefits through the online application process provided by ODJFS on or about June 29, 2020, which was processed at servers located in the State of Virginia. At the time that **GROVES** completed the application, she falsely claimed that her place of employment was closed due to COVID-19 and that she was the primary caretaker of a child or other individual who was unable to attend school or another facility due to the COVID-19 pandemic, which school or facility care was required for her to go to work. **GROVES** further filed certifications through the online ODJFS system for the weeks of June 21, 2020 through January 17, 2021, in which she failed to respond to the question whether she continued to be unemployed due to the COVID-19 pandemic and falsely claimed that she did, in fact continue to be unemployed due to the COVID-19 pandemic. At the time that she filed these certification, **GROVES** was, in fact, employed and earned income between December of 2019 and October of 2020. **GROVES** further failed to disclose that she had previously filed an application for PUA benefits from Michigan UIA. As a result of these false and fraudulent claims, approximately $11,800 in PUA funds were loaded onto debit cards that were delivered to **GROVES** by the United States Postal Service.

g) Defendants **MAYE, ANTHONY** and **GROVES** obtained the personal identifying information of other individuals, both known and unknown to the Grand Jury, that they utilized to file additional claims for PUA benefits from ODJFS. Some of these

8

individuals agreed to the filing of these applications on their behalf, with knowledge that they were not entitled to PUA benefits, and with the understanding that **MAYE** would receive all or a portion of the PUA benefits they received.

h) Defendant **ANTHONY** filed or assisted others in filing the applications through the ODJFS system and created or assisted others in the creation of bank accounts to which PUA benefits would be deposited. **MAYE** directed the individuals to provide their personal identifying information to **ANTHONY** and **GROVES** for the purpose of filing these applications for PUA through the ODJFS system. Due to her involvement in the creation of bank accounts into which PUA benefits were deposited, **ANTHONY** obtained and maintained access to PUA funds for her own use and the use of **MAYE**.

In violation of 18 U.S.C. § 1349.

**A TRUE BILL.**

s/ Foreperson
**FOREPERSON**

**DAVID M. DeVILLERS**
**United States Attorney**

**KEVIN W. KELLEY (0042406)**
**Assistant U.S. Attorney**

**HEATHER A. HILL (IL 6291633)**
**Assistant U.S. Attorney**

9